Next case on this morning's docket is the case of People v. Norman Launhardt. And we have Aaron Grebel for the appellant, and we have Patrick Daly for the appellee. So, Ms. Grebel, you can begin when you're prepared. May it please the Court, my name is Aaron Grebel, and I appear on behalf of the appellant, Mr. Norman Launhardt. Your Honors, if I may reserve three minutes for rebuttal, it would be most appreciated. Your Honors, in this case, the issue centers on a comparison between the Abuse and Neglected Child Reporting Act of 1975 and an act following just four years later, which is the Mental Health and Developmental Disabilities Confidentiality Act of 1979. And I'll refer to those as the Reporting Act and the Confidentiality Act. The appellant is asking the Court to compare and harmonize the intent and the scope of both of those acts. Here at trial, there was a letter from a counselor that then prompted testimony from that same counselor regarding defendants' privileged communications that took place in a counseling setting after the incident had already been reported to Child Protective Services, after law enforcement had already been notified. So essentially what happened here was the trial court denied the defendant's motion in limine and permitted testimony about what was at that point historical information to be put before the jury. Our argument is that it defeats both acts, but it also violates the explicit terms of the Confidentiality Act. If we look first at Section 10 of the Confidentiality Act, we see so much language that would be rendered superfluous if this Court were to find in favor of the State, which is to say that the testimony was admissible. We have an explicit statement in Section 10A that says that the recipient, which would be the patient here, Mr. Lampart, the appellant, holds the privilege and has the privilege to refuse to disclose and to prevent the disclosure of his record of communications to a therapist. And that is true, and I quote, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto. It's explicit. If we compare then the language in the Reporting Act, let me back up for one moment. The Reporting Act is just that. So it is directed at identifying and intervening on behalf of children who are currently at risk. There's nothing mysterious about the intent or the scope of the Reporting Act, and yet somehow, in pretrial, the State Attorney's Office managed to take this narrow act that provides a limited exception and somehow really just render large swaths of the Confidentiality Act irrelevant and superfluous. And we're asking the Court to set that right. Wasn't that based upon a letter that your client asked the psychologist to write? Oh, that's certainly true, Your Honor. However... I mean, there's no indication that the psychologist actually came forward on her own and breached some privilege. What happened is your client asked her to write the letter. What about the waiver issue? Well, what the counselor did do on her own was fail to seek a waiver that she is required by statute to have. And it's mentioned several times throughout that act. But then I think there's language, too, with regard to re-disclosure. And you'll find that in Section 10, Paragraph C... I'm sorry. It's in Section 9, and that's Paragraph 5B, and then the third unnumbered paragraph. And what we have is that a patient also holds the privilege to prevent re-disclosure. So, even if we moved through the timeline of events where that letter makes its way to the prosecutor's office, sort of inexplicably that trial counsel allowed that to happen. But if we move to that point where the testimony is put on at pretrial or the testimony comes on at trial, the patient holds the privilege to prevent re-disclosure. There's no way it was that destroyed. Well, the defense counsel did file a motion in limine once counsel found out about it. Right? Yes, Your Honor. I mean, the defense counsel did at least what he or she could to prevent re-disclosure at the trial level. Re-disclosure after the fact, the disclosure, I think, yes. But what... It's like once the cats out of the bag go to a third party, it's the prosecutor, not the defense lawyer. I mean, your client had his psychologist send the letter directly to the prosecutor. Right? I don't think that's clear from the record, Your Honor, exactly how Dr. Schneller determined that it should go directly to the prosecutor's office. Certainly, clarification on all sides would have been needed. Certainly, it had to be the patient that requested the letter rather than the attorney, his attorney. And the record's clear on that, Your Honor, that it was the defendant's appellant who requested a character reference. And what he received was a letter containing factual disclosures or characterizations of Ms. Schneller's, then directed to the state attorney. The defendant asked her or his attorney to do that, right? Pardon? The defendant asked the doctor to do that. To create the letter, yes. But it's not clear, Your Honor, that Mr. Leungar asked letters sent directly to the state attorney's office. And also turning to your phrase, Your Honor, about the cat being out of the bag, I would just note that this privilege, because of the explicit language regarding redisclosure, differs from the attorney-client privilege, which would be something that I would be more familiar with, which is that once something has been disclosed to that third party, then the privilege as to that information no longer exists, but that is not true here. And the Confidentiality Act is explicit as to that fact. The other considerations that we would ask the Court to consider is that the Confidentiality Act, which has the lengthy descriptions of when something can be disclosed, when it cannot be, is not only more specific, but it's also later in time. It doesn't seem to make a lot of sense as to why the legislature would enact the Abuse and Neglected Child Reporting Act in 75 and then turn around four years later and promulgate all of this very explicit language that has absolutely no relevance to anything because the 75 Act destroys the privilege blanketly in a child abuse and neglect proceeding. But we know that's not true. We know that's not how to read the Reporting Act, because if we turn to Section 10A of the Confidentiality Act, again, the one that's later in time and more specific, we find that the only time that it can be disclosed under the Act is when a person enters their mental health as a defense, particularly in an insanity defense. And then it is only admissible where the trial court finds after an in-camera examination that that information is more probative than prejudicial. And yet another piece of the balancing test there is that there is no other satisfactory evidence but for that which is seeking to be disclosed, and that's not true here. There was other testimony as to the facts that the state was tending to prove. And then again, under A1 of that section, the disclosure must be more important to the interest of justice than protection from injury to the therapist-recipient relationship. And we can compare the case that the state relies on principally is Morton, and that was a 1989 case, Your Honors. And we find in that case some language that was, well, I think rectified might be a way to look at it, by the United States Supreme Court in Redmond in 1996. So we find in Morton where, but also just to note, the conversation there between the defendant and the hospital social worker, prior to that time the defendant was told that the conversation was not confidential. So the expectation seemed to be no, but in any event, part of the rationale in Morton was that if a therapist is required to report a conversation, then there couldn't be a privilege at all because those who would speak truthfully would be those who were emotionally compelled to speak advice, even if no confidentiality existed. And that's one way to look at it, certainly. But then if we turn to the language in Redmond, which is much later, 1996, the United States Supreme Court was looking at Federal Rule of Evidence 501 and whether or not they should perhaps import a common law psychotherapist privilege. And the court noted in its rationale that without a privilege, much of the desirable evidence to which the litigants seek access to, for example, admissions against interest by a party, is unlikely to come into being. And this unspoken, quote-unquote, evidence will therefore serve no greater truth-seeking function than if it had been spoken in privilege. And so what we submit is that is the rationale that we'd ask the court to follow, not the rationale in Morton. And we'd also ask the court to follow its precedent in Kucharski. And Kucharski, as you'll likely recall from the briefs, was the defendant who had swallowed 230 balloons of MDMA and was suffering an overdose in the hospital. And there the court prepared the Criminal ID Act as a limited exception or as an exception to the physician-patient privilege. And what is the nature of the exception that is promulgated by the Criminal ID Act? And the court in Kucharski said that, in fact, it's limited to reporting or, in the terms of that act, notification of law enforcement. So certainly the scope does not eviscerate the entire physician-patient privilege. That's what happened here. It seems to be one of the better analogies that I've come across and have the pleasure to present to this court, fairly straightforward that way. And what they're saying in Kucharski was that certainly hospital staff may break or pierce confidentiality to report that someone has a crime-related injury, but no further. And it certainly doesn't lift confidentiality for purposes of testifying. We submit the same is true here. And to find against the appellant, at this point, we don't have a statutory interpretation issue. But to find against the appellant, we will, because of what it will do, if the Reporting Act is allowed to eclipse the Confidentiality Act. We have entire sections of the Confidentiality Act where the language would be rendered superfluous, irrelevant, mysterious, and there's no need. And so we ask the court to rectify this error and set this case back for a new and fair trial. Thank you, Mr. Greenblatt. You'll have the opportunity for rebuttal, I don't think, so thank you. Thank you, Your Honor. Mr. Daly. As a preliminary matter, there was some discussion about a Redmond case. I don't have a reply brief, nor is that case discussed in the brief, so I don't even know what that case says. If that could be provided to me at some point so I can take a look at it, I don't know. Okay. But I can't respond to it because I don't even know what the case says. So there's a reply brief that has not been- I don't think there's a reply brief file in this case. Redmond was not discussed in the main brief, so- Okay, I see what you're saying. I can speak to her afterwards, and if I can get the court to respond to it, perhaps, in a motion of some sort. Sure, you'll have the opportunity. If I can request the court now orally, and I'll do so in writing. Go for it. And then that'll be my only thing I'll say in that regard. There are really two discrete issues here at play. That is, waiver and then a statutory interpretation question in regards to Section 4 of the Mandate of the Court. I think that the waiver issue is a little bit more clear-cut than the statutory interpretation was a bit murkier. I think this court can go ahead and confirm an either of those. What happened here was that the prosecutor received a letter from the defendant's counselor, Mary Jo Schneller. Now, counsel here indicated that it's not clear whether there was an intent to have the letter addressed to the prosecutor. But, obviously, Mary Jo Schneller testified prior to trial, the pre-trial hearing, with regards to the defendant's motion in limiting the state's request to use the letter. And it was discussed and it was stated by the doctor that it was agreed upon to prepare this letter. And, obviously, there was an intent for the letter's drafting. And the intent is pretty explicit, and that is to act as essentially a way to convince the prosecutor not to proceed in the prosecution. And the doctor sort of putting her office behind the credibility of the victim, excuse me, the defendant, and the story that he was providing that was going on. This court sees the contents of the letter, including the brief. It's certainly, I think, incriminating in a high degree. And so, naturally, it's going to be something the state's going to want to use. General waiver principles for confidentiality are pretty straightforward. I think that we all agree, of course, that there is a statutory confidentiality that exists between a therapist and a patient. However, that privilege is held by the patient. If the patient agrees to a third-party disclosure, that essentially ends the confidential character of the communication. So I think as a general principle, before I get into the little quirks that are involved here, it is that by asking his counselor to write this letter, the defendant has waived the confidentiality of every staff communication that exists and contains in the letter itself. Arguably, perhaps, it would be eliminated any confidentiality, but that's not an issue we necessarily get into, because a trial is the only thing that the state sought with the letter and the contents of the letter. And the doctor did testify at trial as well, so there's a foundation for the letter's omission as well. The quirk, I think, and counsel alludes to it in our argument, was what is the effect of whether there was a waiver, a written waiver, executed. Dr. Schneller testified that there was no written waiver that was done in this case, except as it existed between the counselor and defense counsel. So I think there's a basis in our attitude to agree that there was not a written waiver with regards to sending the letter to the prosecutor. What struck me about this is it's sort of akin to my initial thought of this, I guess, being a criminal lawyer, is it's a lot like an exclusionary rule, fruit of the poisonous tree type of argument, that there is somehow a violation of the prescriptions of the waiver rules with regards to confidential communications, and that essentially that error that occurs there precludes the further use of that further on down the line, much like a fruit of the poisonous tree, where a principle of illegality essentially will suppress everything that occurs after that. So the only case that I found in that regard, and I sort of use this as a frame for the analysis here, is the case of Keeble v. Burnidge. I hope you're not just going to hear me. Burnidge is a case by the Illinois Supreme Court where a clergyman, not quite sure whether or not he was required under the Mandated Reporter Act to disclose certain confidential communications, disclosed information to DCFS. That resulted in further activity, which resulted in the prosecution of the defendant. The circuit court below it held that the reporting of that information was improper. The defendant pursued the argument that under essentially a form of exclusionary rule, everything that occurred after that had to be excluded from trial and the charges dismissed, because it all stemmed from the principle of illegality of the disclosure of confidential communication. The majority of the Supreme Court said that we're not going to get into whether or not the exclusionary rule applies for this type of thing, for a privileged communication. Suffice to say that if it did, then it was still nonetheless admissible as essentially, and then under the Ineligible Discovery Doctrine. So they're sort of infusing these Fourth Amendment principles into analysis of statutory privileges and communications. But the court was very clear in stating that it wasn't stating per se that that exclusionary rule, as we understand it in the Fourth Amendment context, is applicable. The current justices caution that the analysis really went too far, that the exclusionary rules always involved illegal police activity, illegal activity by the state, which resulted in suppression of evidence, and that this is not their type of situation. This is a situation that involves a statutory privilege. It's not a constitutional right. And that's sort of where the analysis kind of went from there. There's not really a lot of law in this regard past that. And so I guess if we acknowledge the fact, at least for purposes of analysis here, that there was not a written waiver executed, does that act as a preclusive consideration for the state further on down the line? And I think that the answer that this court should come to is the answer is no. Because, again, I think that the concurrent analysis in Burnidge makes a lot of sense. If you look at the confidentiality statutes, both with regards to the existence of the confidential relationship and the existence of what's required for the waiver, the statutes are written in terms of the relationship between the holder of the privilege and the person to whom would do the disclosing of the privilege itself. I point in this regard specifically to one thing that the defendant argued in this case with regards to withdrawal of the consent. And the statute does provide for basically withdrawing the consent. The statute says that it doesn't cure or take back what's already been said, and it would prevent future disclosure. But it also states that it has to be provided to the person who would be given the responsibility for providing the confidential information. So the statutes are written really in terms of the relationship between the patient and the therapist. And I think that's an important consideration, because when we talk about what it is that's the appropriate remedy, I think that when you talk about excluding others for something that is ostensibly and quite obviously a loss of confidentiality as a result of the third-party disclosure, that results in a situation that exists between the therapist and the patient. So the defendant may be convicted, and then he can turn around and assume it's the therapist. That's really sort of what I'm getting at here, is that if the state is not an instigator, or is not privy to, is not part of the main process to providing this information, it clearly was done without the knowledge or connivance of defense counsel, then that creates a situation that certainly is troublesome between the defendant and the therapist, but it doesn't, A, eliminate the fact that it is a confidential communication that has been lost, and, B, that the state did nothing to procure that information for the use of trial. Is that provision on disclosure mandatory, the writing? It says, shall. Shall. And so I would argue, yes. Is the purpose, then, of that warning, of that disclosure, to actually warn the individual? Correct. So the defense argument is that had I known, I wouldn't have written the letter? That's certainly a valid argument to make. I mean, I think that doesn't change my position, because I think, again, you're talking about the relationship between the therapist and the client. Obviously, something happened here. I don't know exactly what transpired between the defendant and the therapist. Obviously, we can at least surmise that there was a discussion that, you know, gee, Norman, what you're saying to me is really believable. I really do think that your daughter started all this, your granddaughter started all this. Maybe we can convince the prosecutor to drop the charges or do something. And so, you know, Mr. Longhart, I agree with the defendant in this regard. He's an elderly man and maybe perhaps not so sophisticated in understanding the ramifications of that. But, again, that's a breach on the therapist's part of the state. So I think that if we start extending that beyond that relationship that exists between these two parties and start creating a rule where we can start prohibiting things further on down the line, that the state is not subject to the disclosure. It's a different situation if the state inserts itself into the deal and asks for things, files motions for motions for in-camera review of certain, you know, privilege information. Then you start getting into trickier territory there because there is a state act that is provoking something that becomes illegal and the illegality then should result in suppression of evidence further on down the line. It sort of goes back to the adage, I guess, and it sounds flippant, but I suppose it's perhaps appropriate, is that, you know, it's not the state's obligation to protect the defendant from his own foolishness. Now, I'm perhaps stating too much there because I don't know if it's his foolishness or it's my opinion it's probably the counselor's foolishness. She had to have known, particularly given the story that was given, that it was going to be not particularly helpful to her client. But that doesn't change the fact that there was a confidential communication. That was sent with the defendant's agreement to the state. And so I believe that the circuit court, in its exercise of judgment, was correct in this regard in finding that the confidentiality was waived. I think the defendant perhaps should give serious consideration to how he wishes to treat his relationship with his counselor at that point going forward. The other ground that the court held that the letters of miscall was under 325 ICS 5-4, and that's sort of the bulk of the defendant's argument here today. I said it's a little bit murkier, and I think that it kind of is. Now, the only authority in the state in this regard is People v. Morton. Morton derives from earlier case law, which sort of delves into the same question about the interpretation of a language in that statute. Let me read it to you real quickly. It's not very long, but it's sort of very right at heart of the Mandated Reporter Statute. It states that the privilege, quality, and communication between any professional person required to report this patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act. So in Canada, there's sort of competing things going on here. I think that Morton was correctly decided in the sense, and this is the argument that we put forward here, that under a plain language interpretation, there's no limitations that are put upon this language, which is read by the courts as essentially eliminating the privilege that exists in this specific type of situation. Now, logically, if that were the case, one thing I have to ask myself is, it probably would have made more sense to put it in the confidentiality statute and not here. But there's also a rule of statutory interpretation which says that general principles, when viewed up against specific situations, specific provisions will apply to the general. So that particular theory of statutory interpretation would dictate that, if it's true, that the privilege does not apply where it's a case involving abused or neglected child and the person is considered to be a mandated reporter and she testified that she was a mandated reporter, then the privilege does not exist. I think you start to get into trickier questions, sort of alluding back to my prior argument. Does that allow the State then to go and start subpoenaing records of counselors looking for something that might apply? We don't have to get to that here, and I don't want to get to that here. I just think under these circumstances, the Court is correct in the statutory interpretation relies upon Morton. Now, the murkiness is this, and this is why I think my preference would be in this Court would rely more upon the waiver principles in this one, is that there's a contextual consideration here. The statute deals with the duties of mandated reporters with regards to reporting these things to the appropriate authorities for intervention by, say, DCFLs. That was an argument that was put forward in the lower courts in Morton. The defendant sort of takes it a step further here and says, well, let's not do that, but it's a temporary relief from the relief, for lack of a better term, from the confidentiality provision stolen solely for the purpose of making the report, and then the confidentiality sort of sinks back in and takes over again. That's not really jiving with the language in the statute, which also says that you're excluded, that the confidentiality does not apply in any judicial proceedings that stem from the same. The contextual portion, though, is that are we talking about abuse and neglect hearings in the juvenile courts there, or are we talking about all proceedings that may stem from the disclosure, which, of course, could be criminal prosecution? My answer to that here is that there's nothing in the statute, despite the contextual situation in Mexico, that makes that explicit. In the absence of explicit limitations, the plain language of the statute applies, and in that sense, Morton is correct, and if that is what the legislature intended, that it only applied in that situation, then that's what the legislature should have done. I think that that's the case that the defendant speaks about here. The Kucharski case is interesting in that regard. Kucharski was an exception to the physician-patient privilege, where people providing medical treatment are allowed to provide details of the treatment to the police, and the language is phrased very specifically in that regard. The court in that case would allow the physicians who are treating the defendant to testify extensively about what it is that they were doing, and the appellate court held that, no, the limitation is right there in the statute, that the exception to the physician-patient privilege applies only to a communication from the medical care provider to the police, and it doesn't extend to any kind of testimonial situation. And I think that you've got to contrast that with what we have here. We don't have such a limitation built into the language of the statute, and, in fact, it's expansive in the regard that it speaks of testimonial consequences of the disclosure as a result, and it talks about judicial proceedings. It doesn't say, you know, abuse and neglect hearings or anything along those lines. It says judicial proceedings. So I think that when you look at the totality of that language, this plain language, the more the court's assessment that essentially that language destroys the confidential nature of the communications, assuming that those qualifications are met with the mandate of the reporter, and about the case of abuse and neglect, then that would eliminate the confidential nature of the communication and would allow for the admission of the letter itself. So I do think this court could affirm on either ground, but I do think that the waiver principle here is pretty clear-cut. I do think that with the added proviso that the court will have to consider whether or not the application of the exclusionary rule, under the assumption that there was a violation of that which exists between the client and the therapist, the waiver, the written waivers, clearly there was a waiver in regards to the fact that it was a third-party disclosure to the state. And the intention was to basically provide the state a story without the defendant actually ever having to testify or provide anything to the court across the nation. Now, I do want to make one final point in that regard, going back to the waiver. The communication between the therapist and the patient, when we speak about the written waiver, when we speak about the admonishment, I think that the fairest interpretation to be given to that is that it's not a, although it's framed in terms of shall, it is an admonishment to the party which has given the power to disclose the confidential information, in this case the therapist, of what they are required to do as a predicate. It doesn't act in that regard itself as a vehicle by which any subsequent disclosure becomes in that. So in that regard, I think that it becomes defined in terms of a breach of perhaps the therapist's duty to their patient, but it is not, I would say, a procedural prerequisite to the disclosure, such that the absence of it necessarily renders it inadmissible in any context. Now, that's my argument. There's not a lot of law in this regard. I'm basing this principally upon the fact that the language is wholly directed to, between the therapist and the patient, the privilege holder and the one who has the ability to disclose it to the third party. And I think that that, plus the fact that the exclusionary rule is a deterrent to unlawful police conduct, which you clearly don't have in this case at all. I think everyone's in agreement in that. The state did nothing wrong. It just walked into an office with a letter and brought all the great stuff together. The defendant asked that, right? The defendant asked that. The defendant told the doctor during that letter? Well, again, I agree with counsel. We don't know exactly what the defendant, I know, the defendant did not testify at the pretrial hearing. The counselor testified that they had agreed to send the letter, and the letter was sent to the prosecutor. So it's one and one together. It's two. I mean, who else would want that letter? What objective reason was there to send the letter then? The therapist testified, however, didn't she? Yes. And was there any information brought out about that? There was not. I don't recall that there was any specific information brought out about the nature of the exact communication between the therapist and the defendant with regards to what it is that they're trying to do. It was just the acknowledgement that they had spoken about it and the decision that they made, and who forensically and jointly made, to send this letter to someone, not necessarily to the prosecutor. Ms. Branson said that the doctor testified that the defendant requested her to wipe the letter. Okay, that's fine. That's correct. I think, just to finish this sentence, I think what I'm saying is I agree with the defendant. It's not clear that she said write it to the prosecutor. She didn't say write the letter. I'm just saying, who else would the letter be for? That's the part. Given this consensus in the aisle, obviously the objective has been sought by its creation. Thank you for your time. Thank you, Mr. Daly. Rebuttal. Thank you, Your Honors. There's no reason to analogize the exclusionary rule, Wong's son and his progeny do not apply here, for exactly the reasons that the state has laid out, which is that the exclusionary rule is a deterrent when the wrongful actor is the state. That's not true here. No one's saying that it is. What has happened here is the trial court's ruling is repugnant to a statute, which is the project title. And my colleague has just informed the court that, in fact, the confidentiality doesn't speak to the re-disclosure, I'm sorry, subsequent disclosures of this information, but it certainly does. In subsection 5D, in subsection 10C3, in subsection 95B, each time the statute reiterates that the patient retains the privilege to prevent re-disclosure. And that is a statutory right whose ruling is repugnant to it. Is there a warning given in the written disclosure? If there had been a written disclosure, would that warning that you can revoke at any time have been in there? I can't say that I know the answer to that, Your Honor, but I know that in the statute that, I mean, that that right is in there. How a therapist would be mandated to phrase that disclosure, I would assume to be a licensing issue that I am unfortunately ignorant of. But generally speaking, when someone signs a waiver, the scope that is included in that waiver and whether or not it's revocable and for how long it's valid and for what purposes. We can also look at section 3 of the confidentiality act, Your Honors, just one last time. That the communication shall not be disclosed except as provided in this act. That's it. That is a complete statement. And that is the scope of the confidentiality act. It covers all of them, the exception included in the recording act. And I would know that counsel for the state read part of it, but left out the end of the sentence. And we don't have to put the court in a position to parse the statute, but let's look at it for a moment. If we look at section 4 and the unnumbered paragraph 7, where the privileged quality of communication between a person required to report shall not apply to situations involving abuse and neglected children and shall not constitute grounds for failure to report as required by this act or constitute grounds for failure to share information or documents with the department during, and that's the modifier I would call the court's attention to, during the course of a child abuse or neglect investigation. So if we're going to take that very long sentence apart, I would argue that the final clause modifies the entire thing because, in fact, this is a reporting requirement. It is a reporting statute. So the very last phrase that counsel did not read during the course of a child abuse or neglect investigation I would argue is a temporal limitation. A temporal limitation for this act, limiting the exception that it provides, and then if we then compare to the many, many references to a waiver and the prohibition on abuse closure and the confidentiality act, it is, there's no reason to further parse the statute. It's plain on their faces what they're still committed to. And we pray that the court would send this case back for a new and fair trial. Thank you, Your Honor. Thank you. Thank you both for your briefs and arguments. We'll take the matter under advisement.